1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ARMSTRONG,

          Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

          Defendant.

CASE NO.    C05-5826FDB-KLS

REPORT AND
RECOMMENDATION

Noted for July 28, 2006

Plaintiff, Amy Armstrong, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is twenty-four years old.[1] Tr. 23.  She has a tenth grade education and past work experience as a fast food cashier, concession stand operator, certified nurse assistant, and sales

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1  representative. Tr. 20, 68, 75.

2        On December 31, 2002, plaintiff protectively filed an application for SSI benefits, alleging disability

3  as of February 6, 2002, due to bipolar disorder. Tr. 16, 58, 67.  Her application was denied initially and on

4  reconsideration. Tr. 23-25, 31.  A hearing was held before an administrative law judge ("ALJ") on March

5  11, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a

6  vocational expert. Tr. 284-322.

7        On May 23, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding

8  specifically in relevant part:

9        (1)    at step one of the disability evaluation process, plaintiff had not engaged in
              substantial gainful activity since her alleged onset date of disability;

10

11        (2)    at step two, plaintiff had "severe" impairments consisting of an affective disorder
              and an anxiety disorder;

12        (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of
              those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

13

14        (4)    at step four, plaintiff had the residual functional capacity to perform work
              without any physical restrictions, but with certain non-exertional limitations,
              which precluded her from performing her past relevant work; and

15

16        (5)    at step five, plaintiff was capable of performing other jobs existing in significant
              numbers in the national economy.

17  Tr. 21-22.  Plaintiff's request for review was denied by the Appeals Council on November 10, 2005, making

18  the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.

19        On December 22, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's

20  decision. (Dkt. #1-#3).  Specifically, plaintiff argues that decision should be reversed and remanded for an

21  award of benefits, or, in the alternative, for further administrative proceedings, for the following reasons:

22        (a)    the ALJ erred in giving controlling weight to the opinion of the medical expert;

23        (b)    the ALJ erred in evaluating plaintiff's mental functional capabilities;

24        (c)    the ALJ erred in finding plaintiff was non-compliant with medical treatment; and

25        (d)    the hypothetical question the ALJ posed to the vocational expert was defective.

26  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reason set

27  forth below, recommends that the ALJ's decision be reversed, and that this matter be remanded to the

28  Commissioner for further administrative proceedings.  While plaintiff requests oral argument in this matter,

REPORT AND RECOMMENDATION
Page - 2

1  the undersigned finds such argument to be unnecessary here.

2                                   DISCUSSION

3          This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

4  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

5  support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

6  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

7  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

8  a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

9  1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

10  one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d

11  577, 579 (9th Cir. 1984).

12  I.        The ALJ Erred in Evaluating the Opinion of the Medical Expert

13          The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

14  medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the

15  record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

16  ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must

17  be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.

18  1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact

19  inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

20  "falls within this responsibility." Id. at 603.

21          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

22  supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

23  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

24  thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."

25  Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the

26  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

27          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

28  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a

REPORT AND RECOMMENDATION
Page - 3

1   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

2   legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

3   ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

4   F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

5   why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

6   (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

7        In general, more weight is given to a treating physician's opinion than to the opinions of those who

8   do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

9   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

10  "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

11  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

12  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

13  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may

14  constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

15  31; Tonapetyan, 242 F.3d at 1149.

16       At the hearing, the medical expert, Dr. Norman Gustavson, testified that the restrictions in plaintiff's

17  activities of daily living were "between mild and moderate," and that while her anxiety was a "barrier" for

18  her, she was able to "kind of" work around it. Tr. 315.  He further testified that she had "marked"

19  difficulties in maintaining social functioning, due to "her history of problems" with her bosses, neighbors,

20  and teachers. Id.  In addition, Dr. Gustavson testified that while there was "nothing in the record" regarding

21  difficulties with concentration, persistence or pace, her limitations in that area were "[m]ild to moderate."

22  Id.  He also found no episodes of decompensation of extended duration, although he did note "many, many

23  decompensations of a short period." Tr. 315-16.

24       Finally, Dr. Gustavson testified that he saw no reason why plaintiff's condition would prevent her

25  from taking her medications or getting to her mental health treatment appointments on time, though he did

26  admit that attendance issues she mentioned with respect to one of her jobs did correlate with her problems

27  maintaining good attendance with her treatment providers. Tr. 316.  More specifically regarding the missed

28  appointments, Dr. Gustavson concluded in relevant part as follows:

[W]hat seems to come up most in the . . . records about the missed appointments is double-booking herself, or [at] least that's what sort of, they talk about.  It's a little different issue than not showing up just because you found something else better to do or didn't feel like going that day or -- so, but I think they probably are related.  They probably -- I mean I don't know why she had so much absenteeism at these other things. We didn't get into talking about.

Tr. 317.

 With respect to Dr. Gustavson's testimony, the ALJ made the following findings:

Dr. Gustavson's testimony is considered, but it is not adopted.  The claimant in fact has relationships with family, she has a boyfriend, and she goes to appointments when she chooses to do so.  She apparently has some social limitations based on her frequent conflicts with neighbors.

Tr. 19.  Plaintiff argues the ALJ erred by failing to adopt Dr. Gustavson's testimony.  First, plaintiff asserts the ALJ should have given Dr. Gustavson's testimony controlling weight, because Dr. Gustavson was the only medical source to have reviewed the entire record.  While this certainly is a factor the ALJ should take into account in evaluating a medical source opinion, it alone does not necessarily meant the ALJ is required to adopt that opinion or give it controlling weight.  See 20 C.F.R. § 416.927(d)(6); Social Security Ruling 96-6p, 1996 WL 374185 *2.

 Second, plaintiff asserts the ALJ erred by stating that she goes to her appointments only when she chooses to do so.  To support this assertion, plaintiff points to that portion of Dr. Gustavson's testimony where he stated she was "not showing up just because" she "found something else better to do or didn't feel like going that day." Tr. 317.  She also claims Dr. Gustavson testified that it was her personality disorder that caused her to miss her appointments.  While it does appear Dr. Gustavson gave some indication that plaintiff's attendance issues may have been due in part to her personality disorder, he clearly concluded that ultimately he did not know why "she had so much absenteeism." Id.  As such, it is not at all clear that Dr. Gustavson felt her absenteeism was due to factors other than her own choosing.

 Plaintiff's mental health treatment progress notes, furthermore, fail to show that her absenteeism is necessarily the result of her personality disorder. See Tr. 132, 185, 205, 207, 210, 213, 243, 247.  For example, it was noted in late May 2003, that she had "missed several prior appointments," and it was "[s]tressed" to her "the importance of attending her appointments." Tr. 132.  In mid-June 2003, plaintiff's mental health treatment provider stated that a letter should be sent to her informing her that she needed to attend on a "monthly basis." Tr. 247.  Again, it was explained to her later that month that she needed "to

keep appointments." Tr. 243.  In late April 2004, plaintiff was reported to have called to cancel her appointment only after that appointment was over because she was out of the area, and the mental health treatment provider commented that a continuing attempt to "reach" her "from time to time" would be made to see if she was "willing to make therapy appointments and keep them." Tr. 213.

In early May 2004, plaintiff "did not appear" for her scheduled appointment, nor did she call ahead of time to cancel. Tr. 210.  The mental health treatment provider again commented that "[i]t is challenging for the client tohave [sic] an idea[l] therapy experience when attendance is sporadic." Id.  The same thing occurred later that month, and it was noted that "[a]t some point we will need to determine whether or not Amy's life is such that she is truly able to come regularly to appointments." Tr. 207.  It is true that one mental health treatment provider opined in early March 2005, that because of plaintiff's "extreme anxiety around others," she had "not been able to participate" in her self-help classes. Tr. 270.  However, none of the prior progress notes mentioned or indicated this as a reason for her multiple absences.

Nevertheless, the undersigned finds the ALJ erred in evaluating Dr. Gustavson's testimony.  The fact that plaintiff has a family and a boyfriend alone is an insufficient reason to discount Dr. Gustavson's opinion regarding her social functioning.  That is, the mere fact that a claimant can relate to his or her family or significant other, does not necessarily mean that claimant is able to function effectively around others.  In addition, while, as discussed above, the record fails to establish that plaintiff's absenteeism is necessarily due to her personality disorder, it also fails to show definitively that her absences are due solely to the fact that she goes to appointments only when she chooses to do so. Tr. 19.

On the other hand, Dr. Gustavson is the only "acceptable medical source" in the record to find she has marked restrictions in her activities of daily living. Tr. 125-28, 162-72, 277-80; See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"); 20 C.F.R. § 416.913(a), (d).  As discussed above, the mere fact that Dr. Gustavson's testimony post-dates the other medical source opinion evidence in the record, does not alone mean that testimony should be given the most or controlling weight.  The ALJ's decision, however, fails to indicate how the ALJ evaluated Dr. Gustavson's testimony in light of this other evidence.  Accordingly, on remand, the Commissioner shall re-consider that testimony and evidence, and re-determine what weight, if any, to give Dr. Gustavson's opinion regarding plaintiff's social functioning.

1    II.      <u>The ALJ Erred in Evaluating Plaintiff's Mental Functional Limitations</u>

2         To evaluate the severity of a claimant's mental impairments, the Commissioner must "follow a

3 special technique at each level in the administrative review process." 20 C.F.R. § 416.920a(a).  Under this

4 technique, the Commissioner first determines whether the claimant has a medically determinable

5 impairment. 20 C.F.R.§ 416.920a(b)(1).  If the claimant does have such an impairment, then the

6 Commissioner rates the "degree of functional limitation" resulting from that impairment. 20 C.F.R. [§

7 416.920a(b)(2).

8         Rating the degree of functional limitation involves consideration of four functional areas: activities

9 of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20

10 C.F.R.§ 416.920a(c).  If a claimant's degree of limitation in the first three areas is rated "none" or "mild"

11 and "none" in the fourth area, then the claimant's mental impairment generally is considered not severe,

12 unless evidence in the record otherwise indicates there is more than a minimal limitation in the claimant's

13 ability to do basic work activities. 20 C.F.R. § 404.920a(d)(1).  At the initial and reconsideration levels of

14 the administrative review process, "a standard document" is completed to record how the above technique

15 was applied. 20 C.F.R.§ 416.920a(e).  At the ALJ hearing level, documentation of the technique is done in

16 the decision itself. <u>Id.</u>

17         Here, plaintiff argues the ALJ erred in failing to rate the degree of limitation caused by her mental

18 impairments.  Defendant counters that the ALJ did properly document his rating of plaintiff's degree of

19 limitation by making the following findings:

20         The claimant's file was reviewed by a consulting psychologist for the State Disability
        Determination Service (DDS) in April 2003 [James L. Lewis, Ph.D., Tr. 162-72].  He
21         determined that the claimant had a bipolar disorder, an anxiety disorder NOS, and a
        history of substance abuse in remission.  These impairments caused mild difficulty with
22         daily living activities, moderate difficulty with social functioning, and mild difficulty with
        concentration, persistence, and pace.  There were one or two extended episodes of
23         decompensation.  The claimant's condition did not meet the "B" or "C" criteria of a
        listing . . . More specifically, the claimant could manage simple and complex instructions
24         and simple work-related decisions.  She might have some difficulty responding to others
        and would work best away from frequent public contact . . . This assessment has a fair
25         degree of support in the record.

26 Tr. 20.  The undersigned agrees with plaintiff that the ALJ failed to adequately set forth in his decision the

27 degree of limitation caused by his mental impairments.  While the ALJ found Dr. Lewis' findings to have "a

28 fair degree of support in the record," it is far from clear that the ALJ intended such reference to those

findings to constitute the rating required by 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION
Page - 7

Nevertheless, the undersigned finds such error to be harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error). Rating the degree of limitation is used to determine whether or not a claimant's mental impairments are severe. Here, the ALJ found plaintiff's affective disorder and anxiety disorder to be severe. Plaintiff has not alleged that the ALJ should have found any other of her mental impairments to be severe. Thus, while the ALJ did err here, that error had no effect on the ALJ's ultimate decision regarding plaintiff's disability.

III.   The ALJ Did Not Err in Finding Plaintiff to Have Been Non-Compliant with Medical Treatment

Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ found a "lack of cooperation with treatment" on the part of plaintiff. Tr. 19. Specifically, with respect to this issue, the ALJ found in relevant part as follows:

> She has a history of refusing to comply with recommended treatment; she said that she will not take medication . . . and she has frequent no-shows at appointments . . . When asked why, she said that she does not like pills and she has other errands to do. These comments suggest that the claimant is not as limited as she has reported.

Id. Plaintiff argues the ALJ erred in so finding, citing to Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995) for the proposition that the ALJ "must 'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment." (citations omitted). What the Ninth Circuit actually stated in that decision, however, was that the ALJ must do so "before basing a denial of benefits on noncompliance."[2] Id. (emphasis added).

---

[2]The ALJ did state that he found plaintiff's "lack of compliance with treatment" to constitute "substantial grounds to deny disability benefits" as well. Tr. 19. If the ALJ actually had based the denial of benefits on plaintiff's non-compliance, this would indeed have been improper as the ALJ made no specific examination of plaintiff's medical conditions and personal factors that bore on whether she could reasonably remedy her impairments. It appears, however, that the ALJ did not deny plaintiff benefits for this reason, as it was not contained in the ALJ's formal findings section. See Tr. 21.

Plaintiff further argues though, that the ALJ also erred in finding that she actually had been non-compliant with her recommended treatment.  The undersigned disagrees.  While, as discussed above, the record does not definitely support the ALJ's finding that plaintiff goes to appointments only when she chooses to do so, it clearly indicates there has been at least some level of non-compliance in that regard.  Other evidence in the record, furthermore, shows plaintiff to have been non-compliant with respect to taking recommended medication as well.  As such, the ALJ did not err in relying on this factor in part to discount plaintiff's credibility.

As noted above, the record documents a number of instances when plaintiff missed her mental health treatment appointments without providing timely or adequate explanations for those absences. See Tr. 132, 185, 205, 207, 210, 213, 243, 247.  Her mental health treatment providers at the time also noted that her treatment was being rendered much less effective because of her absenteeism, despite it being explained to her the need for consistent attendance. See id.  In addition, while there is some indication in the record that plaintiff had refused to take her medication out of fear of potential side effects (see Tr. 177, 232, 251, 262, 265, 268), other evidence indicates otherwise (Tr. 125, 128, 185, 190, 212, 220, 226, 229-30, 249-52, 256, 258-61, 266, 269, 316).

For example, plaintiff reported in early April 2003, that it was "difficult for her [to] comply with a medication that is not on a simple, twice a day schedule," rather than due to anxiety over perceived side effects. Tr. 125.  Indeed, it was noted expressly at that time that her treatment had been "spotty with many medication trials and poor compliance." Tr. 128.  Dr. Gustavson testified that there was no reason why her condition would prevent her from taking her medication or, indeed, getting to her appointments on time. Tr. 316.  In early July, 2003, plaintiff reported that she had "tried medication several years ago, but then she got pregnant with her first son and could not take many of the medications," again, rather than because os any fears she had regarding side effects. Tr. 185.

While she expressed a willingness to take medications at that time, later she still had not done so. Tr. 190, 265-66, 269.  In addition, she reported that "she threw out her old medication when she was angry once about not taking them." Tr. 266.  In late September 2003, plaintiff reported that despite being afraid of taking her medications, she knew she needed to "in order to help her manage her moods and anger outbursts," and stated that she was going to try to do so. Tr. 230.  Although plaintiff reported that she was

1   "finally starting to take them" in late October 2003, by late January 2004, she apparently still had not started
2   to do so. Tr. 229, 261-62.

3       When she did start taking her medications, plaintiff reported "a big change in her anxiety attacks,"
4   that she no longer was having any, and that she felt "more 'mellow.'" Tr. 259.  She also told one of her
5   mental health treatment providers that she would take her medication if she had to, because she knew that
6   she needed "to be on something." Tr. 226.  She continued to have "[n]o side effects" from her medication
7   for the most part, and her temper remained "under control." Tr. 256, 258-60.  In mid-March 2004, it was
8   noted that plaintiff's medications appeared "to be helping her mood swings and anxiety." Tr. 220.

9       In late April 2004, plaintiff stated that she hated "taking pills," because she kept "forgetting to take
10  them." Tr. 212.  She further reported at the time that she was "freaking out even more" than she used to,
11  and was told that she was "not experiencing the beneficial affects [sic] that she would if she were totally
12  med-compliant." Id.  In late May 2004, plaintiff stated that she was "trying real hard to be med-compliant."
13  Tr. 208.  Yet, despite her prior improvement on medication and expressed willingness to take them, she
14  reported again going off her medications for a month in late July 2004, and "noticed a big increase in
15  anxiety and depression" as a result thereof. Tr. 251-52.

16      Plaintiff reported having "been off her medication for many months" in late December 2004, as well,
17  despite acknowledging once more that she had tolerated it "well" when she was on it. Tr. 249-50.  Indeed,
18  she was "anxious" to go back on the medication at that time. Tr. 250.  The ALJ, therefore, had plenty of
19  evidence on which to base his determination that plaintiff had been non-compliant with her recommended
20  treatment.  To the extent that such evidence could be seen as contradictory or ambiguous, furthermore, this
21  is not a legitimate basis for challenging that determination. See Allen, 749 F.2d at 579 (court may not
22  reverse credibility determination where that determination is based on contradictory or ambiguous
23  evidence).  Accordingly, the undersigned finds no error here.

24  IV.    The ALJ's Step Five Analysis

25      If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation
26  process the ALJ must show there are a significant number of jobs in the national economy the claimant is
27  able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ
28  can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-

1   Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157,

2   1162 (9th Cir. 2000).

3       An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

4   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

5   1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

6   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

7   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

8   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

9   description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

10   2001).

11       Here, the ALJ posed the following hypothetical question to the vocational expert:

12       Considering someone of the Claimant's age, education, and work experience, has a
        tenth-grade education.  She is 23 years old with non-public, limited contact with
13       coworkers, limited contact with supervision.  Let's make it detailed but not complex.

14   Tr. 319.  In response, the vocational expert testified that there were other jobs that plaintiff could do. Id.

15   Based on the vocational expert's testimony, the ALJ found plaintiff capable of performing other jobs

16   existing in significant numbers in the national economy. Tr. 20-21.

17       Plaintiff argues the above hypothetical question was defective, because the ALJ improperly rejected

18   the testimony of Dr. Gustavson, and because he mis-characterized the evidence in the record with respect to

19   her medication compliance and appointment attendance.  As discussed above, while the evidence in the

20   record does not necessarily support the ALJ's statement that plaintiff goes to appointments only when she

21   chooses to do so, the ALJ nevertheless did not err in finding her to be non-compliant with recommended

22   treatment and thus properly discounted her credibility in part for that reason.  On the other hand, also as

23   discussed above, the ALJ provided insufficient reasons for rejecting the testimony of Dr. Gustavson.  For

24   that reason alone, it is not clear the hypothetical question the ALJ posed to the vocational expert included

25   all of plaintiff's limitations.

26   V.      This Matter Should Be Remanded for Further Administrative Proceedings

27       The Court may remand this case "either for additional evidence and findings or to award benefits."

28   Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

REPORT AND RECOMMENDATION
Page - 11

except in rare circumstances, is to remand to the agency for additional investigation or explanation."
Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Here, as discussed above, issues remain as to the nature and extent of plaintiff's difficulties in maintaining social functioning and as to whether she is capable of performing other work existing in significant numbers in the national economy.  For these reasons, this matter should be remanded to the Commissioner for further administrative proceedings.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 28, 2006**, as noted in the caption.

DATED this 6th day of July, 2006.

Karen L. Strombom
United States Magistrate Judge